IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO. 1:90-cr-00231-MR-WCM-5

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>THOMAS FLOYD LITTLEJOHN,<br><br>Defendant. | **O R D E R** |

**THIS MATTER** is before the Court on remand from the United States Court of Appeals for the Fourth Circuit for further consideration of the Defendant's "Motion for Reduction of Sentence Per the First Step Act of 2018" [Doc. 63].

**I.  BACKGROUND**

On September 13, 1991, a jury found the Defendant Thomas Floyd Littlejohn guilty of one count of conspiracy to possess with intent to distribute, and distribute cocaine and cocaine base; thirteen counts of possession with intent to distribute cocaine, and aiding and abetting the same; twelve counts of distributing cocaine, and aiding and abetting the same; one count of possession with intent to distribute cocaine base, and aiding and abetting

the same; and one count of distribution of cocaine base, and aiding and abetting the same. [See Doc. 13-1: Judgment]. In the Presentence Report ("PSR"), the probation officer found that the Defendant was responsible for a total of 97 kilograms of cocaine and 198.45 grams of cocaine base, resulting in a base offense level of 36. [Doc. 62: PSR at ¶ 16]. A three-level increase was applied given the Defendant's role as a manager of the drug distribution conspiracy, resulting in a total offense level of 39. [Id. at ¶¶ 19, 23].

At sentencing, the Court found that the Defendant had at least two qualifying prior convictions that triggered the career-offender enhancement under U.S.S.G. § 4B1.2: a 1983 North Carolina conviction for assault with a deadly weapon inflicting serious injury (AWDWISI) and 1989 North Carolina conviction for possession with intent to sell and deliver a controlled substance. [Doc. 13-1: Judgment at 4; Doc. 62: PSR at ¶¶ 29, 35, 45]. Based on the career-offender enhancement, the Defendant faced a guidelines range of 360 months to life. [Doc. 13-1: Judgment at 4; Doc. 62: PSR]. On December 10, 1991, the Court imposed a sentence of 360 months' imprisonment. [Doc. 13-1: Judgment]. The Judgment was affirmed on appeal. See United States v. Fletcher, 993 F.2d 1540, 1993 WL 149916 (4th Cir. 1993) (unpublished table decision).

In May 2019, the Defendant filed a *pro se* motion for relief under the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018). [Doc. 63]. The Court denied the Defendant's motion, concluding that the Defendant was not eligible for relief because the statutory penalties for the quantities of controlled substances for which the Defendant was convicted "were not impacted by the Fair Sentencing Act of 2010." [Doc. 65 at 3]. Additionally, the Court concluded that his guidelines calculation "was based upon his classification of a career offender." [Id.].

The Defendant appealed, arguing that he is entitled to First Step Act relief and that his career offender designation is no longer valid in light of the Supreme Court's decision in Johnson v. United States, 576 U.S. 591 (2015). On August 25, 2020, the Court of Appeals vacated the Court's Order and remanded the case for further consideration of the Defendant's motion in light of two intervening published appellate opinions: United States v. Chambers, 956 F.3d 667, 668 (4th Cir. 2020) (holding that "any Guidelines error deemed retroactive . . . must be corrected in a First Step Act resentencing"), reh'g denied (July 8, 2020), and United States v. Gravatt, 953 F.3d 258, 263-64 (4th Cir. 2020) (holding that a defendant is convicted of a "covered offense" under the First Step Act "where he was charged conjunctively with conspiring to distribute both powder cocaine and crack

3

cocaine"). On remand, this Court concluded that the Defendant is eligible for relief under the First Step Act. However, the Court rejected the Defendant's arguments that his career offender designation was erroneous and that his post-sentencing conduct warranted a reduction in his sentence. [Doc. 75].

The Defendant again appealed. [Doc. 78]. The Court of Appeals vacated the Court's Order and remanded for further consideration of the Defendant's motion "under the two-step paradigm set forth in Concepcion [v. United States, 597 U.S. 481 (2022)]…." [Doc. 85 at 4]. The Court of Appeals issued its mandate on November 1, 2023. [Doc. 89].

## II. DISCUSSION

On August 3, 2010, the Fair Sentencing Act of 2010, Pub. L. 111-220, went into effect. Section 2 of the Act increased the quantity of cocaine base required to trigger the enhanced penalties of Section 841. Specifically, it raised the (b)(1)(A) threshold from "50 grams" to "280 grams" and the (b)(1)(B) threshold from "5 grams" to "28 grams." Section 3 eliminated the mandatory minimum for simple possession of cocaine base under 21 U.S.C. § 844(a). Congress did not apply these changes retroactively to defendants sentenced before the Act's passage. Accordingly, the Defendant could not obtain relief under the Fair Sentencing Act.

On December 21, 2018, the President signed into law the First Step Act of 2018, Pub. L. 115-391. Section 404 of the Act gives retroactive effect to the changes made by Sections 2 and 3 of the Fair Sentencing Act of 2010. Section 404(a) defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by Section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010." Section 404(b) then provides that "[a] court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if Section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed."

The Defendant is eligible for relief under the First Step Act because he was convicted of a "covered offense" under Section 404(a)'s definition. See Gravatt, 953 F.3d at 263-64. His offense was committed before August 3, 2010; he was subjected to the enhanced statutory penalties under § 841(b)(1)(A); and those statutory penalties were "modified by Section 2 . . . of the Fair Sentencing Act." Further, the Defendant's sentence has not been previously reduced by the operation of Sections 2 or 3 of the Fair Sentencing Act of 2010, and no previous motion has been made by the Defendant pursuant to Section 404 of the First Step Act of 2018.

5

Having determined that the Defendant is eligible for relief, the Court next turns to the issue of what relief, if any, to which the Defendant is entitled. In Concepcion, the Supreme Court set out a two-step framework for district courts to use in exercising their discretion under the First Step Act. First, the district court must recalculate the defendant's benchmark guideline range to reflect the retroactive application of the Fair Sentencing Act. Concepcion, 597 U.S. at 498 n.6; United States v. Troy, 64 F.4th 177, 184 (4th Cir. 2023), cert. denied, -- S.Ct. --, 2023 WL 6378392 (Oct. 2, 2023). Second, the district court may consider any post-sentencing conduct or non-retroactive changes in the facts or law in fashioning an appropriate sentence, using the properly recalculated guideline range as the benchmark. Concepcion, 597 U.S. at 498 n.6; United States v. Reed, 58 F.4th 816, 821 (4th Cir. 2023). Ultimately, however, the First Step Act confers broad discretion to the court and "does not require a court to reduce any sentence." Concepcion, 597 U.S. at 501 (citation and internal quotation marks omitted); Reed, 58 F.4th at 821.

Here, if the Fair Sentencing Act's amendments had been in effect at the time of the Defendant's offense, his offense level would have been reduced by two levels to 37. Because of his career offender status, however, his criminal history category would still have been calculated as VI, resulting

6

in a guideline range of 360 to life. As such, application of the First Step Act would result in no change to the Defendant's guideline calculations.

As noted supra, the Defendant contends that his 1983 North Carolina AWDWISI conviction no longer qualifies as a career offender predicate in light of Johnson. While the Court of Appeals has not expressly decided the issue, see United States v. Mills, 917 F.3d 324, 329 (4th Cir. 2019) (expressing "some doubts" as to whether North Carolina AWDWISI constitutes a crime of violence), several North Carolina district courts have concluded that AWDWISI is no longer a crime of violence. See United States v. Geddie, 125 F.Supp.3d 592, 600-01 (E.D.N.C. 2015); Hunt v. United States, No. 1:13CV848, 2016 WL 4183311, at *2 (M.D.N.C. Aug. 5, 2016) (unpublished); Callahan v. United States, Nos. 7:03-CR-00085-F-1, 7:16-CV-00083-F, 2016 WL 3962947, at *3 (E.D.N.C. July 21, 2016); United States v. Jones, No. 4:15-CR-5-FFL, 2015 WL 4133747, at *3 (E.D.N.C. July 8, 2015).

Assuming without deciding that the Defendant's AWDWISI conviction is no longer a valid career offender predicate, the Defendant's criminal history category would decrease from VI to V. With a total offense level of 37, the Defendant's guideline range would be 324-405 months. The

Defendant's current sentence falls directly within this amended guideline range.

The Court also may consider any mitigating evidence presented by the Defendant, including any post-sentencing rehabilitation. Concepcion, 597 U.S. at 498 n.6. On this point, the Defendant has not presented any mitigating evidence for the Court's consideration. The most recent supplemental Presentence Report filed with the Court indicates that the Defendant has participated in a number of educational programs and work assignments while incarcerated. [Doc. 90 at 2]. This supplemental Presentence Report also notes, however, that the Defendant has had a number of significant disciplinary infractions throughout his period of incarceration, including multiple instances in the past year alone. [Id. at 1-2]. These infractions including multiple instances of using or possessing drugs/alcohol; possessing an unauthorized item; fighting; possessing a hazardous tool and refusing to obey an order; giving/accepting money without authorization; and multiple counts of phone abuse-disrupting monitoring. [Id.]. In light of these serious infractions—six of which were committed while the Defendant's present motion for sentence reduction was pending—the Defendant's post-sentencing conduct does not militate in favor of a sentence reduction in this case.

8

Case 1:90-cr-00231-MR-WCM   Document 91   Filed 01/16/24   Page 8 of 10

Finally, as the Court noted in its prior Orders [Docs. 65, 75], the breadth of the Defendant's offense conduct cannot be ignored. The Defendant was involved in an extensive, wide-ranging drug conspiracy, which involved the distribution of multi-kilogram shipments of cocaine into this District over the period of several years. The Defendant ultimately was found responsible for 97 kilograms of cocaine and 198.45 grams of cocaine base. Given the prodigious quantities of powder cocaine involved in his offense, it appears to the Court that it is not speculative to deduce that the Defendant would still have been prosecuted pursuant to § 841(b)(1)(A), even if the provisions of the Fair Sentencing Act of 2010 had been in place.

In light of all these circumstances, the Court concludes that any reduction of the Defendant's sentence would not adequately reflect the seriousness of the offense, promote respect for the law, or provide just punishment. Accordingly, in the exercise of its discretion, the Court denies the Defendant's request for relief under the First Step Act.

**IT IS, THEREFORE, ORDERED** that the Defendant's "Motion for Reduction of Sentence Per the First Step Act of 2018" [Doc. 63] is **DENIED**.

**IT IS SO ORDERED.**

Signed: January 15, 2024

Martin Reidinger
Chief United States District Judge

10